**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| GREGORY WATKINS, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| INTERNATIONAL UNION, SECURITY, | : | |
| POLICE AND FIRE PROFESSIONALS | : | |
| OF AMERICA, INTERNATIONAL | : | C.A. No. 15-444-LPS |
| UNION, SECURITY (SPFPA), SPFPA | : | |
| AMALGAMATED LOCAL 511, | : | |
| FRONTLINE SECURITY SERVICES, | : | |
| LLC, a Maryland Limited Company, | : | |
| DEVONNE O. EDWARDS, RICHARD | : | |
| RHAMES, individually and in his official | : | |
| Capacity, and THE UNITED STATES OF | : | |
| AMERICA, DEPARTMENT OF | : | |
| HOMELAND SECURITY, | : | |
| | : | |
| Defendants. | : | |

G. Kevin Fasic, Katherine R. Witherspoon, Anthony N. Delcollo, COOCH & TAYLOR, P.A., Wilmington, DE

     Attorneys for Plaintiff

William L. O'Day, Jr., WOLOSHIN LYNCH & NATALIE, P.A., Wilmington, DE
Scott A. Brooks, GREGORY, MOORE, JEAKLE and BROOKS, P.C., Detroit, MI

     Attorneys for Defendants International Union, Security, Police and Fire Professionals of
     America, International Union, Security (SPFPA) and SPFPA Amalgamated Local 511

Jennifer G. Brady, Janine L. Hochberg, POTTER ANDERSON & CORROON, LLP
Wilmington, DE

     Attorneys for Defendant Devonne O. Edwards

Jennifer G. Brady, Janine L. Hochberg, POTTER ANDERSON & CORROON, LLP
Wilmington, DE
Angela D. Hart-Edwards, Julia K. Whitelock, GORDON REES SCULLY MANSUKHANI,
LLP, Washington, DC

      Attorneys for Defendants Frontline Security Service, LLC

## **MEMORANDUM OPINION**

March 23, 2016
Wilmington, Delaware

**STARK, U.S. District Judge:**

## I.    INTRODUCTION

Plaintiff Gregory L. Watkins ("Plaintiff") filed this action pursuant to 29 U.S.C. § 185(a) and Delaware common law alleging breach of fiduciary duty, breach of contract, breach of the implied covenant of good faith and fair dealing, tortious interference with contract, tortious interference with prospective business opportunities, conspiracy to commit tortious interference with prospective economic advantage, and conspiracy to commit tortious interference with business contracts.  Plaintiff filed his original Complaint on June 1, 2015.  (D.I. 1)  In it, he names the following defendants (collectively, "Defendants"): the Security, Police and Fire Professionals of America ("SPFPA"), SPFPA Amalgamated Local 511 ("Local 511"), Frontline Security Services, LLC ("Frontline"), Devonne O. Edwards ("Edwards"), Richard Rhames ("Rhames"), and the United States Department of Homeland Security ("DHS").  (*Id.* ¶¶ 2-7)[1]

On August 21, 2015, Defendants Frontline and Edwards (the "Frontline Defendants") filed a motion to dismiss the Complaint for failure to state a claim.  (D.I. 6)  On September 28, 2015, Plaintiff filed a motion to amend his Complaint.  (D.I. 15)  The Frontline Defendants oppose the motion to amend on the grounds that the amendment is futile.  (D.I. 19)  The Court held an oral argument on January 26, 2016.  (D.I. 25 (Tr.))  The other remaining defendants – SPFPA and Local 511 (the "Union Defendants") – do not take a position on the motions, as these motions are not directed to the claims against these Union Defendants.

---

[1] On July 23, 2015, Plaintiff voluntarily dismissed former Defendants Rhames, an Inspector with DHS, as well as DHS.  (*See* D.I. 3)

1

Presently before the Court is the Frontline Defendants' motion to dismiss the counts of

Plaintiff's original Complaint directed at the Frontline Defendants for failure to state a claim

under Fed. R. Civ. P. 12(b)(6), as well as Plaintiff's motion to amend his Complaint under Fed.

R. Civ. P. 15.  For the reasons that follow, the Court will grant in part and deny in part the

Frontline Defendants' motion to dismiss and will deny Plaintiff's motion to amend.

## II.    BACKGROUND[2]

For approximately ten years, Plaintiff was employed as a security officer by Frontline.

(D.I. 15-1 ¶ 10)  In this capacity, Plaintiff worked with the Federal Protective Service ("FPS"), a

division of the United States Department of Homeland Security.  (*See id.* ¶¶ 6-7, 11)  Plaintiff's

Complaint arises from a series of events that took place on July 17, 2014 and that led to his

eventual termination.  (*See id.* ¶ 11)  While working at the United States Attorney's Office in the

District of Delaware, Plaintiff regularly carried a personal firearm to and from work.  (*Id.*)

Plaintiff alleges that he carried the firearm to work every day and that he did so with the

knowledge of his Frontline supervisor, FPS officers, and "other relevant individuals serving as

part of [his] chain of command."  (*Id.*)  While at work, Plaintiff stored his firearm in a box at his

desk.  (*Id.* ¶ 12)

On the morning of July 17, while Plaintiff was preparing the office for a meeting, his

firearm was discovered by a local police officer.  (*Id.* ¶ 13)  The discovery was reported to FPS

officials, who conducted an investigation and cited Plaintiff for violating federal regulations.  (*Id*

---

[2]This recitation is based, as it must be at this stage, on taking as true all well-pleaded
factual allegations in the proposed amended Complaint (D.I. 15-1).  Except when addressing
Plaintiff's proposed amendments, the Court refers interchangeably to the original Complaint (D.I
1) and the amended Complaint, as they are identical for most purposes.

¶ 14)  Following the FPS investigation, Frontline suspended Plaintiff's employment.  (*Id.* ¶ 15)

FPS officials wrote a letter to Frontline claiming that Plaintiff had violated federal regulations

and requesting that Frontline "take corrective action to eliminate any additional violations."  (*Id.*

¶ 16)  On December 1, 2014, Frontline officials prepared and reviewed a "Disciplinary

Termination Request."  (*Id.* ¶ 17)  Shortly thereafter, Plaintiff was notified that he had been

terminated.  (*Id.* ¶ 19)  Plaintiff attempted to contact his union representative to challenge his

termination, but the union was unresponsive.  (*See id.* ¶¶ 20-24)

Plaintiff claims that his termination was improper.  Specifically, Plaintiff alleges that: his

union, the SPFPA, breached its fiduciary duties by failing to represent him in his employment

dispute; his employer, Frontline, breached its collective bargaining agreement (D.I. 1 Ex. A

("CBA")) with the union; Frontline breached the implied covenant of good faith and fair dealing;

the FPS interfered with his employment contract and with prospective business opportunities;

and Frontline and the FPS conspired to interfere with Plaintiff's employment and with

prospective economic opportunities.  Plaintiff seeks compensatory damage, punitive damages,

back pay, front pay, equitable relief, and attorneys' fees.  (D.I. 15-1 at 16)

## III.    LEGAL STANDARDS

### A.    Motion to Dismiss

Evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) requires

the Court to accept as true all material allegations of a complaint.  *See Spruill v. Gillis*, 372 F.3d

218, 223 (3d Cir. 2004).  "The issue is not whether a plaintiff will ultimately prevail but whether

the claimant is entitled to offer evidence to support the claims."  *In re Burlington Coat Factory

Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997) (internal quotation marks omitted).  Thus, the

Court may grant such a motion to dismiss only if, after "accepting all well-pleaded allegations in the complaint as true, and viewing them in the light most favorable to plaintiff, plaintiff is not entitled to relief." *Maio v. Aetna, Inc.*, 221 F.3d 472, 481-82 (3d Cir. 2000) (internal quotation marks omitted).

However, "[t]o survive a motion to dismiss, a civil plaintiff must allege facts that 'raise a right to relief above the speculative level on the assumption that the allegations in the complaint are true (even if doubtful in fact).'" *Victaulic Co. v. Tieman*, 499 F.3d 227, 234 (3d Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The complaint must state enough facts to raise a reasonable expectation that discovery will reveal evidence of [each] necessary element" of a plaintiff's claim. *Wilkerson v. New Media Tech. Charter Sch. Inc.*, 522 F.3d 315, 321 (3d Cir. 2008) (internal quotation marks omitted).

The Court is not obligated to accept as true "bald assertions," *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (internal quotation marks omitted), "unsupported conclusions and unwarranted inferences," *Schuylkill Energy Res., Inc. v. Pennsylvania Power & Light Co.*, 113 F.3d 405, 417 (3d Cir. 1997), or allegations that are "self-evidently false," *Nami v. Fauver*, 82 F.3d 63, 69 (3d Cir. 1996).

**B.     Motion to Amend**

Pursuant to Federal Rule of Civil Procedure 15(a), a party may amend its pleading once as a matter of course within 21 days after serving it or, if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after

4

service of a Rule 12(b) motion, whichever is earlier. Otherwise, a party may amend its pleading

only with the opposing patty's written consent or the court's leave. Rule 15 provides that courts

should freely give leave to amend when justice so requires.

The Third Circuit has adopted a liberal approach to the amendment of pleadings in an

effort to ensure that "a particular claim will be decided on the merits rather than on

technicalities." *Dole v. Arco Chem. Co.*, 921 F.2d 484, 486–87 (3d Cir. 1990). Amendment,

however, is not automatic. *See Dover Steel Co., Inc. v. Hartford Acc. & Indem.*, 151 F.R.D. 570,

574 (E.D. Pa. 1993). Leave to amend should be granted absent a showing of "undue delay, bad

faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by

amendments previously allowed, undue prejudice to the opposing party by virtue of the

allowance of the amendment, futility of amendment, etc." *Foman v. Davis*, 371 U.S. 178, 182

(1962); *see also Oran v. Stafford*, 226 F.3d 275, 291 (3d Cir. 2000). Futility of amendment

occurs when the complaint, as amended, does not state a claim upon which relief can be granted.

*See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997). If the

proposed amendment "is frivolous or advances a claim or defense that is legally insufficient on

its face, the court may deny leave to amend." *Harrison Beverage Co. v. Dribeck Importers, Inc.*,

133 F.R.D. 463, 468 (D.N.J. 1990).

## IV.    DISCUSSION

### A.    Motion to Dismiss

The Frontline Defendants move to dismiss each of the claims asserted against them in the

original Complaint. These are: Count II alleging breach of the CBA; Count III alleging breach of

the implied covenant of good faith and fair dealing; Count V alleging tortious interference with

5

prospective business opportunities; Count VI alleging tortious interference with prospective

economic advantage; and Count VII alleging civil conspiracy.  The Court addresses each of these

claims below.

### 1.    Count II – Breach of the CBA

Count II of the original Complaint alleges that the Frontline Defendants violated 29

U.S.C. § 185(a) by breaching the CBA.  Plaintiff identifies five discrete violations of Article 8 of

the CBA.  (*See* D.I. 1 ¶ 22; D.I. 1-1[3] ("CBA") at 9-10)  According to the Complaint, Defendants:

      a.     Failed to determine/investigate whether the firing of
              Plaintiff was done with just cause;

      b.     Failed to advise Plaintiff of contemplated
              disciplinary action within the requisite time frame;

      c.     Failed to provide Plaintiff with a
              meeting/conference in the course of an
              investigation;

      d.     Fired Plaintiff without just cause; and

      e.     Suspended Plaintiff for an extended period of time
              with no action or effort made to address the
              underlying allegations.

(D.I. 1 ¶ 33)  The Frontline Defendants argue that their actions were authorized by Articles 5 and

29 of the CBA and, thus, they did not violate the agreement.  (D.I. 7 at 9-10)  The Frontline

Defendants do not challenge the adequacy of Plaintiff's factual allegations.  Instead, the motion

is based solely on the appropriate legal interpretation of the various provisions of the CBA.

---

[3]The CBA is an exhibit to the original Complaint.  (*See* D.I. 1-1)  All parties agree that the Court can and must consider the CBA in resolving the pending motions.

Article 8 of the CBA, entitled "Discipline and Discharge," outlines the steps and

procedures employers such as Frontline must follow when disciplining employees.  Article 8,

Section 1 provides:

> No employee shall be disciplined or discharged except for
> just cause.  The Employer shall notify an employee of its
> intention to impose discipline or to discharge the employee
> within 15 business days after management has actual
> knowledge of the incident. . . .  The employer shall attempt
> to conduct a confidential investigation of the circumstances
> of the event(s) giving rise to the possible disciplinary
> action, including meeting with the employee . . . .

(CBA at 9)  Taking Plaintiff's allegations as true, it is clear that the Frontline Defendants did not

comply with any of the requirements of Article 8.  (*See* D.I. 1 ¶¶ 15-19)

For purposes of the motion to dismiss, the Frontline Defendants do not deny that they

violated the requirements of Article 8.  Instead, they base their motion on Articles 5 and 29 of the

CBA, which the Frontline Defendants argue supersede any obligations they might otherwise have

under Article 8.  (D.I. 7 at 9-10)

Article 5 of the CBA states that employers may:

> establish reasonable quality and performance standards [and]
> formulate and enforce appropriate Employer rules and regulations
> . . . if not covered by the provisions of [the CBA], to hire, suspend,
> promote, demote, transfer, discharge or discipline for just cause, or
> relieve employees from duty because of lack of work, client or
> Government request, or for other legitimate reasons . . . .

(CBA at 7)  Article 29 provides:

> Notwithstanding any provision of this Agreement, to the extent the
> Government requires compliance with specific procedures . . .
> Employer will comply with those requirements without recourse by
> any employee . . . .

7

(CBA at 23)

To the extent the Frontline Defendants are contending that Article 5 on its own obviates any obligation to provide Plaintiff the protections of Article 8, the Court disagrees.  Article 5 provides employers latitude to develop policies and practices but only in areas "not covered by the provisions of" the CBA.  The conduct Plaintiff alleges the Frontline Defendants engaged in was conduct that is "covered by the provisions" of the CBA, i.e., Article 8.

The Frontline Defendants are on more solid ground when they turn to Article 29.  Article 29 allows an employer to deviate from the normal requirements of the Agreement, including those set out in Article 8, "to the extent" required by the government.  (CBA at 23)  According to the Frontline Defendants, "Frontline's decision to terminate Plaintiff was in compliance with . . . FPS' directive 'that Frontline take corrective action to eliminate any additional violations.'"  (D.I. 7 at 9-10)  Plaintiff responds that "[t]here was no direct order to terminate Plaintiff" and that the FPS "never specifically instructed that Plaintiff be terminated."  (D.I. 16-1 at 9)

Taking the allegations of the Complaint as true, the Court agrees with the Frontline Defendants.  In the Complaint, Plaintiff alleges that "Frontline bowed to the wishes of the Department of Homeland Security, pursuant to its agenda to force Plaintiff'[s] termination."  (D.I. 1 ¶ 38)  The Complaint further alleges that Frontline fired Plaintiff "in order to keep its contract with FPS" (*id.* ¶ 40) and that the "FPS . . . insisted that Frontline terminate Plaintiff" (*id.* ¶ 46).  Because Frontline's termination of Plaintiff was done in order to comply with a requirement imposed by the FPS, an agency of the government, Article 29 of the CBA relieved Frontline of the obligations that would otherwise have been imposed by Article 8.  Therefore,

Plaintiff has failed to state a claim for breach of the CBA with respect to his termination by the Frontline Defendants (*see* D.I. 1 ¶ 33(a), (d), (e)).

A portion of Plaintiff's Count II does not relate directly to Plaintiff's termination. Plaintiff also alleges that the Frontline Defendants breached Article 8 of the CBA by failing to provide the procedural protections set out in Article 8.  In particular, in paragraph 33(b) and (c) he contends that he was not advised of contemplated disciplinary action within the requisite time frame and that he was not provided a meeting or conference in the course of the investigation. The Complaint does not allege that FPS required the Frontline Defendants to deprive Plaintiff of these procedural protections.  At this stage of the proceedings, the Court will not presume that implicit in the FPS' directive to terminate Plaintiff was a subsidiary directive to do so without advising him of the contemplated disciplinary action and without meeting with him.  Thus, Article 29 does not prevent Plaintiff from stating a claim on which relief may be granted with respect to these procedural allegations.  Accordingly, the Court will deny the Frontline Defendants' motion to dismiss with respect to the allegations in paragraph 33(b) and (c).[4]

### 2.    Count III – Implied Covenant of Good Faith and Fair Dealing

In Count III, Plaintiff alleges that the Frontline Defendants breached the implied covenant of good faith and fair dealing.  The Court agrees with the Frontline Defendants that this claim is preempted by § 301 of the Labor Management Relations Act, 29 U.S.C. § 185.

---

[4]The Frontline Defendants argued at the hearing that Plaintiff's claim should be dismissed because he failed to exhaust administrative remedies.  (Tr. 31)  Because this argument was made for the first time at the hearing, the Court will not consider it.  *See, e.g.*, *In re Optim Energy, LLC*, 527 B.R. 169, 172 n.3 (D. Del. 2015) ("Normally, the Court will not consider an issue that a party raises for the first time at oral argument."); *Tomasko v. Ira H. Weinstock, P.C.*, 357 Fed. Appx. 472, 479 (3d Cir. Dec. 18, 2009) ("[W]e find that the specific objections . . . raised for the first time at oral argument in the District Court have been waived.").

In *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202 (1985), the Supreme Court discussed the scope of the LMRA's preemptive effect. The Court explained that "state-law rights and obligations that do not exist independently of private agreements . . . are pre-empted." *Id.* at 213. "[W]hen resolution of a state-law claim is substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract, that claim must either be treated as a § 301 claim, or dismissed as pre-empted . . . ." *Id.* at 220; *see also Guerrero v. Hovensa LLC*, 259 Fed. Appx. 453, 457 (3d Cir. Dec. 21, 2007). The inquiry, then, is whether "the state-law claim can be resolved without interpreting the agreement itself." *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 410 (1988).

In Delaware, the implied covenant of good faith and fair dealing is present in every contract. *See Merrill v. Crothall-American, Inc.*, 606 A.2d 96, 101 (Del. 1992). A claim for breach of the covenant requires employer conduct amounting to fraud, deceit, or misrepresentation with respect to the terms or conditions of employment. *See Reed v. Agilent Techs., Inc.*, 174 F. Supp. 2d 176, 191 (D. Del. 2001); *see also Merrill*, 606 A.2d at 101. A plaintiff must allege conduct that "has the effect of preventing [the plaintiff] from receiving the fruits of the contract." *ACE & Co. v. Balfour Beatty PLC*, 148 F. Supp. 2d 418, 426 (D. Del. 2001).

The problem for Plaintiff is that one cannot identify the "fruits of a contract," such as the CBA, without interpreting the contract itself. Similarly, one cannot determine whether an action constitutes fraud "with respect to the terms or conditions of employment" without first identifying the terms or conditions of employment. Because the covenant of good faith and fair dealing can only be understood through reference to the contents of a specific contract,

10

evaluating Plaintiff's claim would require the Court to analyze the contents of the CBA.

Accordingly, the claim is preempted by the LMRA and the Court will dismiss Count III.[5]

### 3.   Count V – Tortious Interference with Prospective Business Opportunities

In response to the Frontline Defendants' motion to dismiss, Plaintiff agreed to dismiss

Count V. (*See* D.I. 16-1 at 13)  Accordingly, the Court will dismiss Count V.

### 4.   Count VI – Conspiracy to Commit Tortious Interference with Prospective Economic Advantage

In order to state a claim for conspiracy under Delaware law, a plaintiff must allege facts

establishing the following elements: (1) two or more persons; (2) an object to be accomplished;

(3) a meeting of the minds between or among such persons relating to the object or a course of

action; (4) one or more unlawful acts; and (5) damages as a proximate result thereof. *See Trice v.*

*Chapman*, 2012 WL 3762872, at *3 (D. Del. Aug. 28, 2012).  In order to state a claim for

tortious interference with prospective economic advantage, Delaware law requires a plaintiff to

allege facts establishing: (1) a reasonable probability of a business opportunity; (2) intentional

interference with that opportunity; (3) proximate causation; and (4) damages. *See eCommerce*

*Indus., Inc. v. MWA Intelligence, Inc.*, 2013 WL 5621678, at *40 (Del. Ch. Sep. 30, 2013).

The Frontline Defendants argue that Count VI fails to state a claim on which relief may

be granted because Plaintiff has not adequately alleged facts sufficient to support the "meeting of

the minds" element of conspiracy.  (D.I. 7 at 17)  Rather than responding to this argument,

---

[5]Given the Court's conclusion that Plaintiff's claim is pre-empted by § 301 of the LMRA, the Court need not reach the Frontline Defendants' alternative argument that Plaintiff was an at-will employee and, hence, that the implied covenant of good faith and fair dealing is inapplicable. (*See* D.I. 7 at 12-14)

11

Plaintiff essentially conceded the pleading deficiency and instead filed his motion for leave to amend the original Complaint. (*See* D.I. 15)

The Court agrees with the Frontline Defendants that Count VI of the original Complaint fails to state a claim because it fails to allege sufficient facts to support the "meeting of the minds" element of conspiracy. Plaintiff alleges no facts showing a meeting of the minds or agreement between Frontline, as Plaintiff's employer, and the FPS or FPS Inspector Rhames. Instead, the Complaint alleges that Frontline acted at the instruction of FPS and/or Rhames. (*See* D.I. 1 ¶ 54(a)) Accordingly, the Court will grant the motion to dismiss Count VI. The Court will address Plaintiff's request to amend Count VI below.

### 5.   Count VII – Conspiracy to Commit Tortious Interference with Employment Contracts

The Frontline Defendants assert that Count VII, alleging a conspiracy to commit tortious interference with an employment contract, fails to state a claim due to (among other reasons) the same failure to allege a "meeting of the minds" that plagued Count VI. The Court agrees and will grant the motion to dismiss Count VII. The Court will address Plaintiff's request to amend Count VII below.

### B.   Motion to Amend

As noted above, rather than respond to the Frontline Defendants' contention that Counts VI and VII of the original Complaint failed to state a claim because it failed to allege adequately the "meeting of the minds" element of conspiracy, Plaintiff filed a motion for leave to amend. (D.I. 15) In the proposed amendment, Plaintiff seeks to add the following allegation to the two conspiracy claims:

> Frontline terminated Plaintiff, by information and belief, based upon instruction from FPS to Frontline, with the specific objective to terminate Plaintiff, as a result of the adoption of FPS's conclusions, with the ulterior motive of blaming Plaintiff for a perceived violation of regulation and policy that was nonetheless approved by his superiors. Defendants' coordinated efforts to investigate Plaintiff's alleged violations despite the U.S. Attorney's refusal to prosecute these "violations", and the subsequent adoption of the conclusions from . . . that investigation by Frontline, reveal a conspiracy to terminate Plaintiff's employment.

(D.I. 15-1 ¶ 55; *see also id.* ¶ 60)  The Court agrees with the Frontline Defendants that this proposed Amendment should be denied as futile. (*See* D.I. 19 at 3)  Other than in a conclusory fashion, Plaintiff does not allege that Frontline, FPS, and Inspector Rhames acted in concert or that there was a meeting of minds to act to terminate Plaintiff.  At most, Plaintiff alleges parallel conduct, which is not sufficient to allege a civil conspiracy. *See Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 226 (3d Cir. 2011).

The proposed amendments are futile for other reasons as well.  First, even if the amended Complaint is read as alleging a conspiracy to terminate Plaintiff from his employment with Frontline, it does not allege a meeting of the minds to interfere with prospective economic advantage (Count VI) or to interfere with employment contracts (Count VII).[6]  The facts alleged in the amended Complaint do not extend beyond Plaintiff's employment with Frontline. (*See* D.I. 15-1 ¶¶ 10-24)  Plaintiff does not allege any particular economic advantage or employment that he lost or failed to obtain, nor does he allege that he has attempted to obtain other

---

[6]Under Delaware law, the elements of a claim for tortious interference with a contract are: (1) a valid contract; (2) about which the defendants have knowledge; (3) an intentional act by the defendants that is a significant factor in causing the breach of contract; (4) done without justification; and (5) which causes injury. *See Gill v. Delaware Park, LLC*, 294 F. Supp. 2d 638, 645 (D. Del. 2003).

employment.[7]  Additionally, to the extent that the alleged conspiracy was directed toward ending

Plaintiff's employment with Frontline, such a conspiracy would not be actionable, as a party to a

contract (here, Frontline) cannot interfere or conspire to interfere with its own contract. *See*

*Tenneco Automotive, Inc. v. El Paso Corp.*, 2007 WL 92621, at *2 (Del. Ch. Jan. 8, 2007)

(explaining that defendant "cannot interfere with its own contract").[8]

Finally, the proposed amended Complaint fails to adequately allege damages, as again it

does not allege any facts indicating that the alleged conspiracy has prevented Plaintiff from

taking advantage of "prospective economic" opportunities.  In order to adequately allege a

reasonable probability of a business opportunity, a  plaintiff "must identify a specific party who

was prepared to enter into a business relationship." *U.S. Bank Nat'l Ass'n v. Gunn*, 23 F. Supp.

3d 426, 436 (D. Del. 2014).  Further, to be reasonably probable, "a business opportunity must be

something more than a mere . . . perception of a prospective business relationship." *Agilent*

*Techs., Inc. v. Kirkland*, 2009 WL 119865, at *7 (Del. Ch. Jan 20, 2009) (internal quotation

marks omitted).

---

[7]The proposed amended Complaint seeks to add paragraph 56, which states:

> Plaintiff's opportunity for future business is and was
> reasonably probable given his flawless personnel record, his
> support throughout this entire investigation by the United States
> Attorney's Office for the District of Delaware, and the U.S.
> Attorney's decision to dismiss all allegations.  Defendants' act of
> terminating Plaintiff's employment constitutes tortious interference
> given Plaintiff's prior flawless record; Defendant thus intentionally
> intererered with Plaintiff's future opportunity to seek employment
> by terminating his employment.

[8]At oral argument, Plaintiff belatedly argued that his claim is allowed under *Nutt v. A.C. & S. Co.*, 517 A.2d 690 (Del. Super. 1986).  (Tr. 29)  The Court does not agree, as *Nutt* does not undermine the proposition that one cannot interfere with one's own contract.

Accordingly, the Court will deny Plaintiff's motion for leave to amend.

V.    **CONCLUSION**

For the reasons provided above, the Court will grant the Frontline Defendants' motion to dismiss with respect to Count II, as it relates to Plaintiff's termination (as outlined in points (a), (d), and (e) of paragraph 33 of Plaintiff's Complaint), Count III, Count V, Count VI, and Count VII.  The Court will deny the motion with respect to Count II, as it relates to the procedures used to effectuate Plaintiff's termination (as outlined in points (b) and (c) of paragraph 33 of Plaintiff's Complaint).  Additionally, the Court will deny Plaintiff's motion for leave to file an amended Complaint as the proposed amendment would be futile.  An appropriate Order follows.